UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CRAFTSMAN CHEMICAL CORP., and MICHAEL MALONEY, <br><br> Plaintiffs, <br><br> vs. <br><br> IVC INDUSTRIAL COATINGS, INC., and PPG INDUSTRIES, INC., <br><br> Defendants. | No. 2:15-cv-00425-LJM-MJD |

## ORDER

This matter comes before the Court on Defendant IVC Industrial Coatings, Inc.'s ("IVC's"), Motion for Partial Summary Judgment, Dkt. No. 67; and on Defendant PPG Industries, Inc.'s ("PPG's"), Motion for Summary Judgment. Dkt. No. 64. For the reasons set forth below, the Court **GRANTS in part and DENIES in part** IVC's Motion for Partial Summary Judgment and **GRANTS** PPG's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Craftsman Chemical Corporation ("Craftsman") is a corporation, owned by Plaintiff Michael Maloney ("Maloney," and collectively with Craftsman, the "Plaintiffs"), that specializes in selling pretreat chemicals and serves as an independent sales representative for other chemical and paint suppliers. Dkt. No. 68 at 2; Maloney Dep., 11:6-11. In the winter of 2010, Maloney contacted IVC's President, Michael McCracken ("McCracken"), about the possibility of Craftsman acting as an independent sales representative for IVC. Maloney Dep., 80:18-81:12. While discussing this possibility with McCracken, Maloney indicated that he had an existing business relationship with Lozier

1

Corporation ("Lozier"), a potential buyer of IVC's powder paints. Maloney Dep., 82:3-5, 85:4-10; McCracken Dep., 32:25-33:6. Based on Maloney's existing relationship with Lozier, McCracken told Maloney that if Craftsman could acquire Lozier's business for IVC, IVC would pay Craftsman a commission for its sales to Lozier. Maloney Dep., 85:4-86:17.

In early 2010, Craftsman began working for IVC as an independent sales representative with the goal of acquiring Lozier's business for IVC. *Id.* at 97:12-100:5. On March 3, 2010, Maloney introduced McCracken to Fred Lopez, the primary contact for Lozier. Maloney Dep., 93:9-11; McCracken Dep., 28:18-24, 32:11-24. However, while the conversations with Lozier were generally positive, Lozier believed IVC's prices were too high, and the parties were unable to agree to a deal. McCracken Dep., 29:2-31:19.

On February 9, 2015, Fred Lopez contacted Maloney and McCracken asking for help after its powder paint supplier told Lozier it could no longer meet Lozier's needs. Maloney Dep., 134:21-24; McCracken Dep., 31:20-32:10. In light of Lozier's emergent situation, IVC secured Lozier's business and began supplying powder paint to Lozier's facilities in Missouri, Pennsylvania, Nebraska, and Alabama in March 2015.[1] Dkt. No. 69, Ex. D.

Although IVC had agreed to pay a commission to Craftsman if it was able to acquire Lozier's business, IVC and Craftsman did not establish the percentage of Craftsman's commission until Lozier began ordering from IVC. Maloney Dep., 107:5-13.

---

[1] IVC also began supplying Lozier's Middlebury, Indiana, plant (the "Middlebury Plant") in August 2015. However, although Craftsman and Maloney assert that they are entitled to commissions from sales to the Middlebury Plant under the Commission Contract, those commissions are not the subject of IVC's Motion for Partial Summary Judgment. Therefore, commissions for IVC's sales to the Middlebury Plant are not addressed in this Order.

On March 9, 2015, Maloney sent an email to McCracken, indicating that he believed a 3.5% commission was appropriate for IVC's sales to Lozier and that a 2% commission seemed "too low for the time already spent and the time going forward needed." Dkt. No. 69, Ex. E. McCracken responded to Maloney's email on March 10, 2015, saying that a 2% commission was "more than fair for the effort expended, and our expectations moving forward." *Id.* Based on this exchange, IVC began paying Craftsman a 2% commission for IVC's sales to Lozier. Dkt. No. 69, Ex. F at 9; Maloney Dep., 28:14-16, 148:11-149:12.

On June 11, 2015, PPG announced its plan to acquire IVC. Dkt. No. 41 at 3. By July 2015, McCracken had lost his patience with Craftsman, believing that it no longer added value to IVC's business, and informed PPG that he did not intend to retain Craftsman as an independent sales representative. McCracken Dep., 85:9-24.

On August 7, 2015, Maloney sent an email to McCracken asking about Craftsman's continued status with IVC in light of PPG's acquisition. Dkt. No. 73, Ex. 5. That same day, Mark Price ("Price"), IVC's Regional Sales Manager who had worked with Plaintiffs since 2012, sent an email to PPG's Vice President of Industrial Coatings for the Americas, Kevin Braun ("Braun"), recommending that IVC discontinue its independent sales representative arrangement with Craftsman after PPG's acquisition of IVC was finalized. Dkt. No. 73, Ex. 6 at 1-2. Braun then asked McCracken if he agreed with Price's recommendation, and McCracken indicated that he did. *Id.* at 1. McCracken further indicated to Braun that he would communicate with IVC's attorney to determine how best to terminate IVC's relationship with Plaintiffs. *Id.*; Dkt. No. 73, Ex. 5.

PPG officially acquired IVC on September 1, 2015. Dkt. No. 41 at 4. On October 1, 2015, after IVC had already recommended terminating its arrangement with Craftsman,

3

McCracken asked Wyatt Aasen ("Aasen"), a representative of PPG, if IVC should pay Craftsman commissions for IVC's September sales to Lozier. Dkt. No. 73, Ex. 7 at 3. Aasen confirmed that IVC should pay those commissions to Craftsman because they did not "want to have a loose thread that [Maloney's] lawyers can pull." *Id*. at 2.

On November 10, 2015, IVC sent a letter to Craftsman to inform it that IVC was terminating its independent sales representative arrangement with Craftsman, effective December 18, 2015 (the "Termination Letter"). Dkt. No. 69, Ex. G; Dkt. No. 73, Ex. 8. In the Termination Letter, IVC agreed to pay Craftsman commissions for all sales to Lozier through the Termination Letter's effective date. *Id*. Craftsman received approximately $80,000.00 from IVC in commission payments for sales to Lozier between March 2015, and December 18, 2015. Maloney Dep., 228:23-229:2.

Upon being terminated by IVC, Plaintiffs commenced this action on December 31, 2015. Dkt. No. 1. In their Amended Complaint, Plaintiffs allege that Craftsman and IVC entered into an oral contract in early 2015, by which Craftsman would earn a 2% commission on all future sales between IVC and Lozier if Craftsman could secure Lozier's business for IVC (the "Commission Contract").[2] Dkt. No. 35, ¶¶ 7-8. Plaintiffs allege that Craftsman fully performed its obligations under the Commission Contract by securing Lozier's business for IVC and that IVC breached the Commission Contract by failing to continue paying commissions to Craftsman after December 18, 2015. *Id*. at ¶¶ 20-25. Plaintiffs also allege that IVC was unjustly enriched as a result of Plaintiffs' efforts. *Id*. at ¶¶ 27-31. Furthermore, Plaintiffs seek declaratory judgment against IVC, declaring that the Commission Contract is a valid and enforceable contract that entitles Craftsman to a

---

[2] None of the parties dispute the existence or validity of the Commission Contract.

4

2% commission on all of IVC's future sales to Lozier.  *Id.* at ¶ 46.  In addition to their claims against IVC, Plaintiffs claim that PPG tortiously interfered with the Commission Contract and with Craftsman's business relationship with IVC.  *Id.* at ¶¶ 33-43.

In its Motion for Partial Summary Judgment, IVC asserts that it did not breach the Commission Contract and that Craftsman is not entitled to declaratory judgment for a 2% commission on all future sales to Lozier because Craftsman has not continued performance as required by the Commission Contract to earn commission payments. Dkt. No. 68 at 11-13.  IVC also argues that Craftsman is not entitled to further commission payments because the Commission Contract did not define the duration of the contract and was terminable at will.  *Id.* at 13-16.  IVC further sought summary judgment with regard to Plaintiffs' claim for unjust enrichment, arguing that such equitable relief is improper where a valid, enforceable contract governs the relationship between IVC and Craftsman.  *Id.* at 16-17.  In response to IVC's Motion, Plaintiffs argue that Craftsman was only obligated under the Commission Contract to acquire Lozier's business in order to receive a 2% commission on all of IVC's future sales to Lozier until the end of the business relationship between Lozier and IVC.  Dkt. No. 70 at 7-10.  Plaintiffs further argue that their claim for unjust enrichment is necessary to ensure that they would be compensated for their work to acquire Lozier's business between 2010 and 2015.  *Id.* at 10-13.

In its Motion for Summary Judgment, PPG claims that it is entitled to summary judgment with regard to Plaintiffs' claims for tortious interference with a contractual relationship and tortious interference with a business relationship because Plaintiffs have provided no evidence demonstrating intentional inducement or any invalid justification for PPG's actions.  Dkt. No. 65 at 6-10.  Additionally, with regard to Plaintiffs' claim for tortious

interference with a business relationship, PPG argues that Plaintiffs did not provide any evidence showing that PPG performed any illegal activity. *Id.* at 10-11. Plaintiffs responded by arguing that there is sufficient evidence proving that questions of fact exist as to whether PPG intentionally induced IVC's actions, and as to whether PPG had a valid justification for its actions. Dkt. No. 8-13. Plaintiffs also indicate that PPG illegally converted the money that Craftsman earned by acting on IVC's behalf in support of its claim for tortious interference with a business relationship. *Id.* at 13-14.

In their Motions, both IVC and PPG argue that Maloney, individually, is not a proper plaintiff in this action because only Craftsman, and not Maloney, was a party to the Commission Contract with IVC. Dkt. No. 65 at 11; Dkt. No. 68 at 18. Plaintiffs, however, assert that Maloney is a proper plaintiff in this action "at least as to Craftsman's counts II (unjust enrichment) and IV (tortious interference with a business relationship)" if the Court were to find that there was no contract governing the parties' relationship between 2010, and 2015, and that IVC was unjustly enriched by Maloney's individual actions. Dkt. No. 70 at 13-14.

## II. <u>SUMMMARY JUDGMENT STANDARD</u>

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which provides in relevant part: "The Court shall grant summary judgment if the movant shows that there

6

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a fact either is or cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Ft. Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm,* 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson,* 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.,* 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary

judgment, even when in dispute. *See Clifton v. Schafer,* 969 F.2d 278, 281 (7th Cir. 1992). If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the Court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.,* 17 F.3d 199, 201 & n. 3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. <ins>ANALYSIS</ins>

#### A. BREACH OF CONTRACT AND DECLARATORY JUDGMENT CLAIMS AGAINST IVC

The parties do not dispute that the Commission Contract is a valid and enforceable oral contract that governs the relationship between IVC and Craftsman. Dkt. No. 35, ¶¶ 7, 20-25; Dkt. No. 41, ¶ 7; Dkt. No. 68 at 17; Dkt. No. 70 at 11-13. However, the parties do dispute what the terms of the Commission Contract entail. Specifically, while Craftsman believes that it did not have any continuing obligations under the Commission Contract after acquiring Lozier's business, Dkt. No. 70 at 8-9, IVC believes that Craftsman had an obligation under the Commission Contract to continue performing services on IVC's behalf to earn its commission. Dkt. No. 68 at 11-13. Additionally, although IVC argues that the Commission Contract is terminable at will because it lacks a specific duration term, *Id.* at 13-16, Craftsman claims that the Commission Contract will terminate only after Lozier ends its business with IVC. Dkt. No. 70 at 10.

Under Indiana law, "[t]he terms of an oral contract are a matter to be interpreted by the jury." *Tuthill Corp., Fill-Rite Div. v. Wolfe*, 451 N.E.2d 72, 77 (Ind. Ct. App. 1983)

8

(citing *Annadall v. Union Cement & Lime Co.*, 165 Ind. 110, 74 N.E. 893, 894 (Ind. 1904)). *See also*, *Motor Transport Underwriters, Inc. v. Specialty Nat. Ins. Co.*, No. 1:06-cv-00219-LJM-WTL, 2006 WL 1843339, at *3 (S.D. Ind. June 30, 2006) (quoting *Podolsky v. Alma Energy Corp.*, 143 F.3d 364, 369 (7th Cir. 1998)). A finder of fact must be "responsible for determining whether an oral term exists and, if so, what its perimeters are." *Golsen-Dunlap v. Elan Motorsports Tech., Inc.*, No. 1:04-cv-00104-LJM-DKL, 2012 WL 3027947, at *8 (S.D. Ind. July 24, 2012) (reconsidered on other grounds) (citing *Bump v. McGrannahan*, 61 Ind. App. 136, 111 N.E. 640, 642 (Ind. Ct. App. 1916)).

To support its claim that Craftsman had continued obligations under the Commission Contract to receive commission payments, IVC cites the email exchange between Maloney and McCracken on March 9 and 10, 2015, and another email from Maloney to McCracken dated August 4, 2015, in which Maloney refers to Craftsman's future efforts. Dkt. No. 68 at 12-13. Plaintiffs, however, point to Maloney's deposition testimony, in which Maloney claims that he understood the Commission Contract to only obligate him to acquire Lozier's business and that any additional efforts that he expended were only made because he had a vested interest in continuing Lozier's business with IVC in order to earn more in commissions. Maloney Dep., 134:19-137:7. Both parties provided sufficient evidence for a finder of fact to determine which interpretation of the Commission Contract with regard to any continued obligations is correct, "and the Court is not in a position to resolve the conflict" between such evidence. *Golsen-Dunlap*, 2012 WL 3027947 at *8 (citing *Anderson*, 477 U.S. at 249; *United States v. Reed*, 875 F.2d 107, 111 (7th Cir. 1987)).

A question of fact also exists with respect to whether the Commission Contract is terminable at will because it lacks a specific duration term. IVC accurately asserts, that "[u]nder Indiana law, a contract which provides no termination date is terminable at will by either party" in order to allow businesses to amicably part ways when a relationship is no longer beneficial. *Automation by Design, Inc. v. Raybestos Prod. Co.*, 463 F.3d 749, 759-61 (7th Cir. 2006). However, a contract need not include a definite termination date to avoid becoming terminable at will. Where a contract "contain[s] a provision that sets out a condition which would terminate [a party's] obligations," the contract is not terminable at will. *Marskill Specialties, Inc. v. Barger*, 428 N.E.2d 65, 69 (Ind. Ct. App. 1981) (concluding that a contract provision indicating the contract would terminated when sales of certain products to certain companies were discontinued is a sufficiently definite duration term to avoid the presumption of being terminable at will). *See also*, *Entm't USA, Inc. v. Moorehead Commc'n, Inc.*, 93 F. Supp. 3d 915, 931 (N.D. Ind. 2015) (distinguishing from *Marksill* because the contract at issue did not contain a specific termination date or any conditions leading to termination). Therefore, if the Commission Contract indicated that it would be terminated only when Lozier ended its business with IVC, as Plaintiffs suggest, this condition would prevent the Commission Contract from being terminable at will. Although IVC provides evidence indicating that IVC did not and would not agree to a "life of the business" duration term, *see* Dkt. No. 69, Ex. E; McCracken Dep., 109:15-110:24, Plaintiffs also offer evidence supporting the existence of such a "life of the business" term. Maloney Dep., 142:23-143:12. Based on this competing evidence, a question of fact exists as to the duration of the Commission Contract.

Because there are questions of fact as to the terms of the Commission Contract that must be determined by a finder of fact, the Court must deny summary judgment for IVC in relation to Plaintiffs' breach of contract and declaratory judgment claims.

## B. UNJUST ENRICHMENT CLAIM AGAINST IVC

Plaintiffs also assert a claim for unjust enrichment against IVC. Dkt. No. 35, ¶¶ 27-31. Specifically, Plaintiffs claim that if the Commission Contract was not formed until 2015, IVC would be unjustly enriched by the work performed by Plaintiffs between 2010, and 2015, when no contract governed the parties' relationship, without Plaintiffs receiving any compensation for that work. Dkt. No. 70 at 12-13. However, IVC argues that such a claim for unjust enrichment is invalid where an enforceable contract exists. Dkt. No. 68 at 16-17.

Under Indiana law, "[u]njust enrichment operates when there is no governing contract." *DiMizio v. Romo*, 756 N.E.2d 1018, 1025 (Ind. Ct. App. 2001). If an express contract governs the parties' relationship, "a claim for unjust enrichment is not cognizable." *CoMentis, Inc. v. Purdue Research Found.*, 765 F. Supp. 2d 1092, 1102 (N.D. Ind. 2011) (citing *Town of New Ross v. Ferretti*, 815 N.E.2d 162, 168 (Ind. Ct. App. 2004)). *See also*, *SMC Corp. v. Peoplesoft USA, Inc.*, No. 1:00-CV-01095-LJM-VS, 2004 WL 2538641, at *3 (S.D. Ind. Oct. 12, 2004) ("when the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law"). "A party cannot pursue equitable relief simply because its contract claim fails, without alternatively alleging that there was either no contract on point or the contract at issue was unenforceable." *CoMentis*, 765 F. Supp. 2d at 1103 (citing *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003); *SMC Corp.*, 2004 WL 2538641 at *3).

11

As stated above, the parties do not dispute that the Commission Contract is a valid and enforceable oral contract that governs the business relationship between IVC and Craftsman. Dkt. No. 35, ¶¶ 7, 20-25; Dkt. No. 41, ¶ 7; Dkt. No. 68 at 17; Dkt. No. 70 at 11-13. Because an express contract governs this relationship, Plaintiffs cannot recover on a theory of unjust enrichment when an adequate remedy at law under that contract is available. While Plaintiffs could have pled their claim for unjust enrichment in the alternative to the existence of a valid Commission Contract, *see CoMentis*, 765 F. Supp. 2d at 1103, the Amended Complaint includes no language suggesting such an alternative claim. Dkt. No. 35, ¶¶ 27-31. Additionally, although Plaintiffs contend that their unjust enrichment claim is necessary to ensure that Plaintiffs receive compensation for their work between 2010 and 2015, no such compensation would be available to Plaintiffs for that time period under their arrangement with IVC because there were no sales between Lozier and IVC during that time from which Plaintiffs could recover commissions. Likewise, IVC did not incur a benefit for Plaintiffs' work during that time period because Plaintiffs' efforts did not result in any sales with Lozier until 2015. Because Plaintiffs are precluded from recovery based on unjust enrichment due to the existence of the Commission Contract, the Court concludes that IVC is entitled to summary judgment on Plaintiffs' unjust enrichment claims.

### C. TORTIOUS INTERFERENCE CLAIMS AGAINST PPG

In addition to the claims asserted against IVC, Plaintiffs also asserts claims against PPG for tortious interference with a contract and for tortious interference with a business relationship. Dkt. No. 35, ¶¶ 32-43.

To prevail on a claim for tortious interference with a contractual relationship under Indiana law, a plaintiff must prove five elements: "(1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach." *Bilimoria Comput. Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 156 (Ind. Ct. App. 2005) (citing *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1234 (Ind. 1994)). Similarly, a plaintiff must prove the following elements to support a claim for tortious interference with a business relationship: (1) the existence of a valid business relationship; (2) defendant's knowledge that the business relationship exists; (3) defendant's intentional interference with that relationship; (4) the absence of justification; (5) damages resulting from the defendant's intentional interference; and (6) illegal activity by the defendant. *See GL Indus. of Mich., Inc. v. Forstmann-Little*, 800 F. Supp. 695, 699 (S.D. Ind. 1991) (citing *Flintridge Station Assoc. v. Am. Fletcher Mtg. Co.*, 761 F.2d 434, 440 (7th Cir. 1985)); *see also*, *Highland TH, LLC v. City of Terre Haute*, No. 2:15-cv-00196-JMS-DKL, 2016 WL 2866052, at *13 (S.D. Ind. May 17, 2016); *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 124 (Ind. Ct. App. 1992).

Plaintiffs contend that there is sufficient evidence to infer that PPG intentionally induced IVC to terminate its relationship with Plaintiffs. Dkt. No. 72 at 8. The Court, however, disagrees. While a court applying Indiana law may evaluate the intentional inducement element of these actions by inference, *see Drake v. Dickey*, 2 N.E.3d 30, 40 (Ind. Ct. App. 2013), an inference of inducement cannot be based on mere speculation. *Goetzke v. Ferro Corp.*, 280 F.3d 766, 781 (7th Cir. 2002).

Even though Plaintiffs cite the email chain from August 7 and 8, 2015, as evidence that PPG intentionally induced IVC to terminate its relationship with Plaintiffs, Dkt. No. 73, Ex. 6, these emails confirm that IVC decided to terminate its relationship with Plaintiffs on its own, without any suggestion from PPG. On August 7, 2015, shortly after Maloney had emailed McCracken asking for him to confirm Craftsman's status in light of PPG's upcoming acquisition of IVC, IVC's Regional Sales Manager, Price, emailed PPG's Braun, stating that Price recommended that IVC "discontinue this arrangement [with Craftsman] once the [acquisition] closes." *Id.* at 1-2. When asked by Braun if he agreed with Price's recommendation, McCracken confirmed that he believed the independent sales representative arrangement with Plaintiffs should be terminated. *Id.* at 1. PPG only asked McCracken whether the termination should occur before or after the acquisition was finalized to avoid potential litigation after learning that McCracken agreed that IVC's relationship with Plaintiffs should be terminated. *Id.*

Further, Plaintiffs argue that an October 1, 2015, email, in which Aasen of PPG advised McCracken to continue paying commissions to Craftsman even after the acquisition was finalized to not "have a loose thread that [Maloney's] lawyers can pull," supports an inference of inducement by PPG. Dkt. No. 72 at 8-9; Dkt. No. 73, Ex. 7 at 2. However, this email, which was sent several months after McCracken confirmed his desire to terminate IVC's relationship with Plaintiffs, merely shows PPG advised IVC on how to manage termination of its arrangement with Plaintiffs and does not demonstrate that PPG induced IVC to terminate that contract.

This evidence, without more, does not support an inference that PPG induced IVC to end its arrangement with Plaintiffs. Therefore, Plaintiffs have failed to meet the

intentional inducement element for claims of tortious interference with a contractual relationship and tortious interference with a business relationship, and PPG is entitled to summary judgment.[3]

### D. MALONEY AS A PROPER PLAINTIFF

Plaintiffs argue that Maloney is a proper plaintiff in this action, at least as to their unjust enrichment claim against IVC and their tortious interference with a business relationship claim against PPG, because Maloney would have been acting individually if the Commission Contract was not effective between 2010 and 2015. Dkt. No. 70 at 13-14. However, because the Court grants summary judgment with respect to Plaintiffs' unjust enrichment claim and both of Plaintiffs' tortious interference claims, only Plaintiffs' claims relating to the Commission Contract remain. Because Maloney, individually, was not a party to the Commission Contract, *see* Dkt. No. 69, Ex. F at 5-6, Maloney is no longer a proper party to this action, and both IVC and PPG are entitled to summary judgment in relation to any claims asserted by Maloney individually.

---

[3] The Court need not evaluate PPG's and Plaintiffs' arguments regarding other elements of these claims because summary judgment is appropriate based on the intentional inducement element of both tortious interference claims.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** IVC's Motion for Partial Summary Judgment and **GRANTS** PPG's Motion for Summary Judgment. Although the Court has granted summary judgment in favor of Defendants on all of Maloney's individual claims and as to all of Craftsman's claims against PPG, partial judgment will not issue at this time.

IT IS SO ORDERED this 25th day of January, 2017.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Adeyemi Adenrele
BARNES & THORNBURG LLP
adey.adenrele@btlaw.com

Edward M. Smid
BARNES & THORNBURG LLP (Indianapolis)
edward.smid@btlaw.com

Andrew J. Miroff
ICE MILLER LLP
drew.miroff@icemiller.com

Samuel B. Gardner
ICE MILLER LLP
samuel.gardner@icemiller.com